UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-24050-MOORE/Elfenbein

**CHERYL WILKERSON**,

    Plaintiffs,

v.

**CARNIVAL CORPORATION**,

    Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION FOR RECONSIDERATION AND MOTION FOR SANCTIONS

**THIS CAUSE** is before the Court on Defendant's Motion for Reconsideration of the Court's Order on Defendant's Motion to Strike Errata Sheets and Motion for Sanctions (collectively "the Motions" or the "Motion for Reconsideration and Motion for Sanctions"), ECF No. [82]. Plaintiff has since filed a Response, ECF No. [107], and Defendant filed its Reply, ECF No. [135]. The Motions are now ripe for review.

**I.    BACKGROUND**

This lawsuit arises from Plaintiff's alleged slip and fall aboard Defendant's cruise ship on October 26, 2022, while disembarking the Carnival Glory on a gangway ramp (the "Incident"). *See* ECF No. [19] at ¶13. Plaintiff alleges that the gangway was "unreasonably slippery" and the gangway lacked the adequate anti-slip strip and slip-guard. *See id*. As a result of the "dangerous conditions," Plaintiff "sustained severe injuries that include, but are not limited to, a complex tear of the anterior horn of her right knee, a midbody region lateral meniscus, injuries to her right knee, pain, suffering, and other serious injuries, which require surger(ies) including, but not limited to, a total knee replacement." *See* ECF No. [19] at ¶¶14-15. On October 23, 2023, Plaintiff filed this

lawsuit.  *See* ECF No. [1].

On February 19, 2025, the Court held a discovery hearing on numerous matters, including Defendant's Oral Motion to Strike (the "Hearing").  *See generally* ECF No. [82-1].  By way of background, Defendant took the depositions of Plaintiff and her husband, Jerry Wilkerson, on April 25 and 26, 2024, respectively.  *See* ECF No. [82] at 1.  About one month later, on May 29, 2024, Plaintiff served a series of errata sheets on Defendant, consisting of a handwritten and a typed errata sheet for Plaintiff's deposition and a typed errata sheet for Mr. Wilkerson.  *Id.;* ECF No. [73-3]; ECF No. [73-5]; ECF No. [82-1] at 61.  During the Hearing, Defendant argued that Plaintiff's handwritten errata sheets should be stricken for failure to comply with Federal Rule of Civil Procedure 30(e)(1)(B) in that they did not include the reason for each change.  *Id.* at 61.  Regarding the typed errata sheet, which contained three changes,[1] Defendant argued the changes were contradictory and should be stricken.  For example, at her deposition, Plaintiff was asked: "And you don't know how long [the substance] was there for?"  *See* ECF No. [82-1] at 61-62 (quoting ECF No. [73-2] at 301).  Plaintiff originally answered: "I have no idea."  *Id.*  But, in the typed errata sheet, her response was modified to: "Must have been at least 5 minutes, since I didn't see anyone spill anything there, and I didn't see it rain during that time."  *See* ECF No. [73-3] at 4.  Her reason for modifying this answer was "clarification; this is what I repeatedly stated before."  *Id.*  At the Hearing, Defendant argued that this change "was a complete contradiction of her earlier sworn deposition testimony, and it is so contradictory to what was said that it is really something

---

[1] The first change was at page 171, lines 4-25 of the deposition, and it was noted as: "It could have been an orange covering over the gangway causing this. Also, the gangway may have been closer to 15 feet total when all parts were added."  *See* ECF No. [73-3] at 4.  The second change was at page 358, lines 11-13, and it was noted as: "See page 267, lines 13-16."  *Id.*  And the last change was at page 301, lines 3-6, and it was noted as: "Must have been at least 5 minutes, since I didn't see anyone spill anything there, and I didn't see it rain during that time."  *Id.*

that was done in bad faith, because what the plaintiff is trying to do is provide a completely different story as to what happened . . ." *Id.* at 62. Defendant then argued that Plaintiff's counsel, Mr. Hayashi, has engaged in a pattern of doing exactly what occurred here — "the plaintiff gets deposed and then we get an errata sheet. Sometimes we will get 10 pages, 20 pages, and they contradict their earlier testimony." *Id.* at 64. Adding to that argument, Defendant explained that "[i]t's always been an attempt to change the testimony concerning notice or some other aspect of liability, where they essentially are trying to do a take-home test." *Id.*

Defendant next addressed the other substantive change in the typed errata sheet in which Plaintiff modified her answer to the following question: "Did you slip on the ramp or the actual gangway, the flat part?" *See* ECF No. [82-1] at 65 (quoting ECF No. [73-2] at 171). Her original response was: "I slipped on the ramp, but it was an orange-colored ramp. This is not it. It was just a small ramp that went across the water for us to get off on. It was nothing like this." *See* ECF No. [73-2] at 171. In her errata sheet, Plaintiff changed her response to: "It could have been an orange covering over the gangway causing this. Also, the gangway may have been closer to 15 feet total when all parts were added." *See* ECF No. [73-3] at 4. The reason given for this change was "considered husband's recollection." *Id.* In support of its argument to strike these changes, Defendant then argued that it "is another complete contradiction of her testimony in an effort to salvage what now Mr. Hayashi is saying, well, maybe she was confused. This is, I think, bordering on bad faith. I'll leave it at that. I don't see how there can be any other explanation. . . . Also, on page 171 the reason was: 'Considered husband's recollection.' So that, I think, proves they are doing a take-home test. I take her deposition. She is then, I guess, conferring with her husband and is now giving what she thinks is the better answer." *See* ECF No. [82-1] at 66.

3

In response, regarding the typed errata sheets, Plaintiff argued that Defendant made it sound like Plaintiff was changing her testimony when, in fact, Defendant was repeatedly "asking her essentially the same question, hoping to get a different answer" and "[a]s soon as he g[ot] a different answer, at her deposition, he pretend[ed] like that's the only answer that counts." *See* ECF No. [82-1] at 70. Plaintiff then directed the Court to other portions of her testimony, arguing that, from those portions of her testimony one can infer that the substance had been there for at least five minutes. *Id.* at 70-76.

At the Hearing, the Court granted the Motion to Strike in part and denied it in part. It struck Plaintiff's handwritten errata sheet "because Plaintiff failed to provide her reasons for making the changes on the errata sheet as required by Rule 30(e)(1)(B)." *See* ECF No. [78]; [82-1] at 78-79. However, it denied the Motion to Strike as it relates to the typed errata sheets to Plaintiff's deposition and Mr. Wilkerson's deposition.[2] *Id.* When denying the request to strike the typed errata sheets, the Court relied on *De Fernandez v. Seaboard Marine, Ltd.*, No. 20-CV-25176, 2022 WL 2304513, at *4 (S.D. Fla. June 27, 2022) for the proposition "that Rule 30(e)(1)(B) should be interpreted broadly, allowing material changes to a deponent's testimony 'in form or substance,'" and it adopted the majority approach in this Circuit on this issue. *See* ECF No. [78]; ECF No. [82-1] at 79. Following the majority view, the Court thereafter employed the "safeguards [that] become available 'to address a substantive change in deposition testimony'" "[w]hen a deponent makes changes to their testimony through an errata sheet," allowing Defendant to reopen the depositions of both witnesses to address these changes and the reasons for the changes. *Id.* (quoting *De Fernandez*, 2022 WL 2304513 at *4).

---

[2] Unlike the handwritten errata sheets, the typed errata sheets contained the reason for each change.

Now, in the Motion for Reconsideration, Defendant only takes issue with the Court's ruling as to the typed errata sheets, asking the Court to reconsider its ruling based on the discovery of new evidence. *See* ECF No. [82] at 2. Defendant first directs the Court to new evidence consisting of messages produced in the matter of *Benson v. Carnival Corp.*, 23-CV-23408-SCOLA ("*Benson*"), that resulted in the filing of a motion for sanctions against Plaintiff's counsel and an evidentiary hearing regarding "false and improper changes to their client's testimony in her errata sheet, including changing 'no' answers to 'not that I recall' and claiming that her recollection was refreshed after reading her deposition testimony." *Id.* at 4. Pointing to other new evidence, Defendant also directs the Court to Plaintiff's March 19, 2025 update deposition testimony. *Id.* Specifically, Defendant points to Plaintiff's deposition answers regarding reason she changed her testimony about the color and length of the gangway as Plaintiff explained she made the change because her husband "said he thought it was longer than what I had said." *Id.* at 5 (quoting ECF No. [82-4] at 51).

In addition to seeking reconsideration of the Court's prior ruling, Defendant seeks relief in the form of a Motion for Sanctions. Defendant argues that sanctions are warranted, including reimbursement of attorneys' fees and costs for the filing of the Motions and the taking of Plaintiff's update deposition, because Plaintiff's counsel improperly coached Plaintiff at the update deposition. *See* ECF No. [82] at 7. In addition, Defendant argues that Plaintiff should be "required to produce all attorney-client communications and work-product materials in this case, and any communications between Plaintiff's counsel and Jerry Wilkerson." *Id.* As to the latter request, Defendant contends that the circumstances surrounding the creation of the errata sheets waived the attorney-client privilege and are subject to the crime-fraud exception. *Id.* at 9-16.

5

-
-

In her Response, Plaintiff first argued that the Court's opinion was correctly decided. *See* ECF No. [107] at 4-8. Regarding the newly discovered evidence in *Benson*, Plaintiff argued this was not newly discovered evidence *in this case* and that Defendant failed to cite any authority in which a court should reconsider its ruling based on evidence from a separate and unrelated proceeding. *Id.* at 8. As to Plaintiff's update deposition testimony, Plaintiff points to several portions of her testimony where she testifies that she made the changes to the errata sheet even though she did not personally type them and assumes her lawyers assisted with typing the changes. *Id.* at 9-10. Finally, on the issue of sanctions, Plaintiff opposes the request and argues that there is nothing improper about counsel instructing Plaintiff not to answer questions seeking attorney-client privileged information or about counsel conferring with Plaintiff during a break in the deposition. *Id.* at 11. Plaintiff also disputes that the submission of an errata sheet is a basis for a waiver of the attorney-client privilege and that the crime-fraud exception applies here. *Id.* at 11-19.

For the reasons explained below, the Motion for Reconsideration and Motion for Sanctions, **ECF No. [82]**, is **DENIED**.

## II.     LEGAL STANDARD

The Eleventh Circuit Court of Appeals recently clarified the standard for reconsideration of an interlocutory order, explaining that its precedents have been "less than clear about what standard of review district courts should employ when faced with such a motion in the context of a non-final order." *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1379 (11th Cir. 2024). Finding that Federal Rule of Civil Procedure 54(b) "governs a district court's reconsideration of interlocutory orders," the Eleventh Circuit explained that the standards of Rule 59(e) and Rule 60(b) "do not apply here" as these rules "only come into play after a final,

-

appealable judgment is entered." *Id.* (citing *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 & n.5; *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000)). Rule 54(b) states that "an order 'that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities," so when "a district court enters a non-final order, it should evaluate motions to reconsider that order under the standards inherent in Rule 54(b)—plenary authority 'to reconsider, revise, alter or amend' a non-final order before the entry of final judgment." *Id.* at 1380 (quoting Fed. R. Civ. P. 54(b); *Toole*, 235 F.3d at 1315 (citation omitted)).

Importantly, although district courts "enjoy plenary *power* to reconsider non-final rulings, they need not employ plenary *review* when doing so." *Id.* (emphasis in original). Given the importance of finality, stability, and predictability of the trial court's decisions, "in most instances district courts should hesitate before revisiting their earlier interlocutory order." *Id.* (citations omitted). The law-of-the-case doctrine guides the district court's discretion in this context and, as a whole, the doctrine "expresses the practice of courts generally to refuse to reopen what has been decided." *Id.* For this reason, district courts should be mindful that a court's decision on a rule of law "'should continue to govern the same issues in subsequent stages in the same case.'" *Id.* (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).

When deciding whether to reconsider a non-final order, such a decision rests within the sound judgment of the district court. *Id.* (citing *Alcock*, 993 F.2d at 805–06). If the party seeking reconsideration can "meet a significantly higher showing for reconsideration," such as those standards that apply to Rules 59(e) or 60(b), then "the district court should not hesitate to revisit its prior ruling." *Id.* However, if a movant cannot satisfy one of these heightened showings, "the

district court may still have room to conclude that reconsideration is appropriate." *Id.* With that said, "a district court typically would not abuse its discretion when rejecting a motion to reconsider an interlocutory order if the movant simply rehashed arguments already considered and rejected." *Id. See also Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) ("A motion for reconsideration cannot be used to 'relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.'") (quoting *Michael Linet, Inc. v. Village of Wellington, Fla.,* 408 F.3d 757, 763 (11th Cir. 2005)).

### III.  DISCUSSION

#### a.  Motion for Reconsideration

To recap, Defendant seeks reconsideration of the Order denying the request to strike Plaintiff's typed errata sheet and Mr. Wilkerson's errata sheet on the basis of newly discovered evidence, consisting of (1) communications revealing Plaintiff's counsel's alleged improper coaching of the plaintiff in *Benson,* and (2) evidence derived from Plaintiff's update deposition. The Court concludes that neither category constitutes new evidence and that Defendant's arguments are simply a re-litigation of arguments previously raised and rejected during the Hearing with additional evidence to bolster those arguments.

As the Eleventh Circuit has explained, a party cannot use a motion for reconsideration to rehash arguments the party previously made or relitigate old matters. *See Hornady*, 118 F.4th at 1380; *Wilchombe*, 555 F.3d at 957. And "[i]f a party is relying on a change in the law or on the availability of new evidence, then that new development must be relevant to the issues on which the matter was initially decided." *Abreu v. Pfizer, Inc.*, No. 21-62122-CIV, 2022 WL 2352443, at *4 (S.D. Fla. June 22, 2022), *report and recommendation adopted*, No. 21-62122-CIV, 2022 WL 3372104 (S.D. Fla. Aug. 16, 2022) (citing *United States v. Mayer*, 760 F. App'x 793, 798 (11th

8

Cir. 2019)).

Turning to Defendant's first argument — that Plaintiff's counsel improperly coaches plaintiffs, such as the plaintiff in *Benson*, to make changes to their errata sheets — the Court already heard and considered this argument during the Hearing. Specifically, Defendant argued that Mr. Hayashi has engaged in a pattern of doing exactly what occurred here — "the plaintiff gets deposed and then we get an errata sheet. Sometimes we will get 10 pages, 20 pages, and they contradict their earlier testimony." *See* ECF No. [82-1] at 64. Defendant further explained that "[i]t's always been an attempt to change the testimony concerning notice or some other aspect of liability, where they essentially are trying to do a take-home test." *Id.*

Now, Defendant once again argues that Plaintiff's counsel improperly coaches witnesses, as evidenced by the messages produced in *Benson*, so Defendant concludes the errata sheet here should be stricken. In its own Motion for Reconsideration, Defendant repeatedly recognizes that it is repeating the same arguments it made at the Hearing. *See* ECF No. [82] at 3 ("*At the February 19, 2025 discovery hearing*, Carnival argued that the typed portion of Plaintiff's errata sheet and Jerry Wilkerson's errata sheet should be stricken *as Plaintiff's counsel has engaged in egregious conduct with respect to the changes*.") (emphasis added); ECF No. [82] at 3 ("Specifically, Carnival argued [referring to the February 19, 2025 hearing] that *the typed changes were presumably made by Plaintiff's counsel and that this is a pattern in almost every case with this Plaintiff's counsel*.") (emphasis added). In its Reply, Defendant likewise recognizes that it is rehashing old arguments. *See* ECF No. [135] at 4 ("Plaintiff's argument that the unequivocal documents filed in *Benson* is not new evidence is entirely incorrect as it establishes *Carnival's precise argument at the discovery hearing: that this improper conduct with regard to their client's errata sheets is a pattern in almost every case with this Plaintiff's counsel*.") (emphasis added).

The Court, therefore, concludes that Defendant's argument is simply a recycled argument with additional evidence to support it.  Because a motion for reconsideration is not a vehicle to re-litigate old arguments, the evidence from *Benson* does not constitute a basis for the Court to reconsider its ruling.

But even if the evidence from *Benson*[3] were new evidence and not a rehashing of old arguments, the Court's ruling stands on the merits.  First, the Court takes judicial notice that Judge Louis held a multi-day evidentiary hearing and oral argument in *Benson* on these issues and has yet not issued a ruling as to whether the conduct was proper or improper.  *See generally docket*, Case No. 23-CV-23408-SCOLA.  The Court will not speculate about the forthcoming rulings in *Benson*.

Even if Judge Louis determined that Plaintiff's counsel acted improperly in *Benson*, Plaintiff's testimony *in this case* about the circumstances surrounding her changes in the errata sheet indicate that nothing nefarious occurred here, so the evidence in *Benson* is not relevant.  *See Abreu*, 2022 WL 2352443 at *4 (explaining that although changed circumstances can be technically classified as newly discovered evidence, the evidence must still be relevant to substantively impact the court's earlier decision regarding the merits of the request).  Plaintiff testified at her update deposition that she did not type the changes in the errata sheet, but she assumed her attorneys assisted with typing the information.  *See* ECF No. [82-4] at 62.  When asked, "[w]ho made those – these proposed changes on page 4 of Exhibit A?," she testified "I did." *Id.* at 62-63.  Plaintiff also denied that her attorneys made the proposed changes, explaining that

---

[3] It is unclear whether evidence discovered in an unrelated proceeding is new evidence in this case for purposes of reconsideration.  Neither Party cites any authorities to support their arguments on this point.  Ultimately, the Court need not decide this issue because, even if the Court considers the evidence, it does not change the outcome.

she made changes to some questions that she was concerned about. *Id.* In fact, Plaintiff testified that she made one of the changes after speaking with her husband and considering his recollection of events, *see* ECF No. [82-1] at 66, which is contrary to the idea that counsel coached her to make the change.

Although Defendant suggests that it is improper for an attorney to type the change in the errata sheet on a client's behalf, this is no different than when attorneys draft answers to interrogatories for their clients. To do so, attorneys must speak with their client about the interrogatories, obtain the necessary information from their client to answer them, type the answers based on the information their client provides, and provide the draft answers to their client to verify their accuracy. Here, Plaintiff testified that she made the changes because there were certain questions that concerned her, but she was not the one who typed the changes onto the form and assumed her lawyers assisted with that. After receiving the errata sheet in her email, Plaintiff signed it and certified that "she read the foregoing transcript" and that "together with any additions or corrections made herein, it is true and correct." *See* ECF No. [73-3] at 4. Thus, regardless of what occurred in *Benson*, Plaintiff testified that she requested these changes.

Turning to Defendant's second piece of "newly discovered evidence," it argues that Plaintiff's update deposition testimony established that she changed her testimony about the color and length of the gangway after she consulted with her husband. *See* ECF No. [82] at 4-5. Again, this is not new evidence. While this may be the first time Defendant asked Plaintiff those questions in a deposition setting, this evidence was known, disclosed, and argued at the Hearing. Looking at the typed errata sheet served on Defendant on May 29, 2024, the reason given for this change is noted as "considered husband's recollection." *See* ECF No. [73-3] at 4. Defendant had this information at the Hearing and argued: "Also, on page 171 the reason was: 'Considered husband's

11

recollection.' So that, I think, proves they are doing a take-home test. I take her deposition. She is then, I guess, conferring with her husband and is now giving what she thinks is the better answer." *See* ECF No. [82-1] at 66. Thus, there is nothing new about the fact that Plaintiff spoke with her husband and considered that information when deciding to change her errata sheet. This was known to Plaintiff, Defendant, and the Court at the time of Hearing. Put simply, this argument is Defendant's attempt to rehash the same arguments it previously made under the guise of "new evidence" because that evidence is now in the form of a deposition answer instead of an errata sheet. This is not a basis for reconsideration.[4] *See Hornady*, 118 F.4th at 1380; *Wilchombe*, 555 F.3d at 957.

The Court finally addresses Defendant's reliance on law from outside this Circuit, law that does not discuss errata sheets, and an Eleventh Circuit decision that does not decide the issue of striking an errata sheet. None of Defendant's authorities persuade the Court to reconsider its ruling. Starting with *Norelus v. Denny's, Inc.*, 628 F.3d 1270 (11th Cir. 2010), Defendant relies on this case for the proposition that plaintiff's changes in her errata sheet are "the classic definition of a take home test, which is precluded by the Eleventh Circuit." *See* ECF No. [82] at 5; ECF No. [135] at 2. In doing so, Defendant picks a single sentence in dicta from *Norelus* and mischaracterizes it as the Eleventh Circuit's "holding." *See* ECF No. [82] at 5-6. The question in *Norelus* was whether the district court properly sanctioned the attorneys under 28 U.S.C. § 1927 for their submission of a 63-page errata sheet that contained 868 changes to their client's deposition testimony and was the sole source of their evidentiary support for Plaintiff's claims. 628 F.3d at 1273. While *Norelus* cites to cases in other jurisdictions in which errata sheets were stricken as

---

[4] As explained above, Defendant's reliance on this testimony contradicts its first argument that Plaintiff's counsel coached her to change her answers in the errata sheet. This testimony further supports Plaintiff's testimony that the desire to change the answers came from her, and not her lawyers, as she spoke with her husband and then decided her deposition testimony needed clarification.

12

well as cases in which they were not, the Eleventh Circuit did not provide a test to analyze whether an errata sheet complies with the spirit of Rule 30(e)(1), which is the issue here. *See De Fernandez v. Seaboard Marine, Ltd.*, No. 20-CV-25176, 2022 WL 2304513, at *3 (S.D. Fla. June 27, 2022), *aff'd sub nom.,* 135 F.4th 939 (11th Cir. 2025) ("The distinction between a narrow and broad interpretation of Rule 30(e), and the fundamental disagreement between the parties here, arises because 'the Eleventh Circuit itself has not squarely interpreted the effect of Rule 30(e) . . .' In *Norelus*, the Eleventh Circuit discussed the striking of an errata sheet, but did not rule on the binding interpretation of Rule 30(e).") (internal citations omitted). *Norelus*, therefore, is not binding on the question of whether Rule 30(e) should be broadly or narrowly interpreted, and, as explained above, the Court followed the majority approach in this Circuit, which is to broadly interpret the rule.

In its Motion, Defendant also relies on decisions within the Ninth Circuit, *B&G Foods North America v. Embry*, No. 20-CV-00526-KJM-SCR, 2024 WL 4262412, *1 (E.D. Cal. Sept. 20, 2024) and *Sheridan v. Caesars Enters. Servs. LLC*, No. 20-CV-00126, 2021 WL 279614, *1 (D. Nev. Jan. 27, 2021), to support its request for reconsideration, *see* ECF No. [82] at 6, but those decisions rely on a Ninth Circuit test, which is not binding on this Court. Finally, Defendant relies on two decisions that do not discuss, mention, much less analyze whether an errata sheet ran afoul of Rule 30(e). *See* ECF No. [82] at 6 (citing to *Joy v. Brown & Williamson Tobacco Corp.*, No. 96-CV-2645, 1998 WL 35229355, *1 (M.D. Fla. May 8, 1998) (discussing whether an affidavit presented on summary judgment should be stricken); *Hall v Clifton Precision*, 150 F.R.D. 525 (E.D. Penn. July 29, 1993) (discussing witness coaching during a deposition). Thus, none of the authorities Defendant cites in its Motion persuade the Court to reconsider its prior ruling.

13

Given the importance of finality, stability, and predictability of the Court's decisions and Defendant's failure to provide this Court with any persuasive reason to reconsider its ruling, the Court will not reconsider what it has already decided and the decision not to strike Plaintiff's typed errata sheet and Mr. Wilkerson's errata sheet stands. The Motion for Reconsideration is denied.

### b. Motion for Sanctions

Independent of the request for reconsideration, Defendant requests various forms of sanctions against Plaintiff. First, Defendant seeks an award of attorneys' fees because Plaintiff's counsel requested a break during her update deposition to speak with Plaintiff and he instructed his client not to answer certain questions based on the attorney-client privilege. In addition, Defendant asks the Court to find that Plaintiff's submission of her errata sheet waived the attorney-client privilege and that Plaintiff's communications with her counsel are subject to the crime-fraud exception.

Starting with the conduct during Plaintiff's update deposition, Defendant's Motion for Sanctions does not specify any provision that authorizes an award of attorneys' fees for misconduct at a deposition. Instead, Defendant relies on a single case, *Hall v Clifton Precision*, 150 F.R.D. 525 (E.D. Penn. July 29, 1993), for its argument, but this case does not decide the issue of sanctions. For purposes of deciding this issue, the Court will assume that Defendant is making its request for sanctions under Rule 30(d)(2), which states: "The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." As this is the applicable provision in the Federal Rules of Civil Procedure, the Court will analyze this issue using this standard.

14

Case 1:23-cv-24050-KMM Document 159 Entered on FLSD Docket 06/06/2025 Page 15 of 18

CASE NO. 23-CV-24050-MOORE/Elfenbein

Defendant raises two arguments in support of its request for sanctions: (1) Plaintiff's counsel improperly requested a break to speak with Plaintiff during the deposition, and (2) Plaintiff's counsel instructed Plaintiff not to answer certain questions on the basis of the attorney-client privilege. By way of background for the first issue, the deposition transcript reveals that Plaintiff's counsel requested a break after Defendant asked, "Well, what did you discuss with your husband about your deposition?" and she responded "I don't know. That's been like two-and-a-half years ago. I -- I mean, I don't remember what all we talked about." *See* ECF No. [82-4] at 6. Thereafter, Plaintiff's counsel asked Plaintiff if she knew what defense counsel meant, and after a brief exchange with defense counsel, Plaintiff's counsel went off the record and asked his client to call him. *Id.* According to the transcript, the break lasted seven minutes, and Plaintiff testified that she spoke with her lawyer for about one minute during the break. *Id.* at 8.

While the Court does not condone lawyers calling for a recess to speak with their client during a deposition, the Court finds that this singular and brief interruption of the deposition did not "impede, delay, or frustrate the fair examination of the deponent." *See Perrymond v. Lockheed Martin Corp.*, No. 09-CV-01936, 2011 WL 13269787, at *3 (N.D. Ga. Feb. 18, 2011) (finding that sanctions were not warranted under Rule 30(d)(2) when counsel spoke with his client during a break and clarified the witness's testimony because there was "no showing that [counsel's actions] impeded, delayed, or frustrated the fair examination of" the witness, the party seeking sanctions failed to show how those actions "altered the course of the [witness's] deposition or interfered with the discovery of the truth," and counsel's actions occurred after the witness answered the question). Looking at the deposition as a whole, the Court finds that Defendant obtained a fair examination of the deponent. The issue arose when Plaintiff was asked several questions about whether she spoke with her husband about her prior deposition, and Plaintiff's

answers suggested some confusion on her end in the way she was answering the questions. *Id.* at 6. Following the break, the Court's review of the testimony reveals that defense counsel was able to ask Plaintiff many questions about her conversations with her husband regarding her prior deposition and her conversations with him that led to the change on the errata sheet. *Id.* at 9, 10, 35, 38, 39, 49, 50, 56, 57, 58, 61, 84, 85, 86, 89, and 91. Indeed, the Court reopened this deposition to allow Defendant to inquire about this precise subject-matter, and the deposition transcript reveals that Defendant inquired and obtained extensive testimony on this topic. Defendant does not point the Court to any evidence demonstrating that this break somehow altered the course of the Plaintiff's deposition or otherwise interfered with the discovery of the truth, and the brief interruption occurred after Plaintiff had answered the pending question. Given the very specific factual scenario presented here, the Court finds that sanctions are not warranted as counsel's actions did not delay, impede, or frustrate Plaintiff's deposition.

Turning to Defendant's second argument, which is that counsel repeatedly invoked the attorney-client privilege when Defendant inquired into such conversations, *see* ECF No. [82] at 8, the Court sees nothing wrong with such an instruction. There appears to be some confusion between the Parties as to whether the Court's Order allowing Defendant to reopen the deposition allowed Defendant to inquire into attorney-client communications. During the Hearing, when Defendant requested the alternative relief of reopening the deposition, Defendant did not ask the Court to make any finding that the attorney-client privilege was waived or otherwise seek authorization to inquire into such privileged communications. Put simply, this subject never came up. So when the Court allowed Defendant to re-depose Plaintiff to address any substantive changes in her deposition testimony and inquire about the reasons for the changes, the Order made no mention of attorney-client communications. Absent a finding of waiver, which was never

requested or made, Plaintiff's counsel properly preserved his client's privilege by instructing her not to divulge any attorney-client conversations. Accordingly, this course of conduct does not warrant sanctions under Rule 30(d)(2) as it did not "impede[], delay[], or frustrate[] the fair examination of the deponent."

Finally, Defendant asks the Court for another sanction — an order compelling the production of attorney-client privileged communications based on waiver as a result of Plaintiff's submission of the errata sheet and the applicability of the crime-fraud exception. While Defendant may label this request as a motion for sanctions, this request is, in reality, a motion to compel attorney-client communications. Defendant should have raised this issue during the discovery period but failed to do so. Despite receiving Plaintiff's errata sheet on May 29, 2024, Defendant waited to compel the communications until April 7, 2025 — 17 days after the close of discovery. Defendant's efforts to compel these communications are untimely. *See El-Saba v. Univ. of South Alabama*, 738 F. App'x 640, 645-46 (11th Cir. 2018) (affirming district court's refusal to consider a motion to compel filed two weeks after the close of discovery when the motion was untimely and the moving party gave no reasonable excuse as to why he did not request an extension of the discovery deadline); *Harborview Realty, Inc. v. Fifth Third Bank, N.A.*, No. 21-CV-942, 2023 WL 7277169, *1 (M.D. Fla. Oct. 3, 2023) (denying motion to compel because the district follows the rule that all discovery must be completed by the discovery deadline, making "[a] motion to compel filed after the discovery deadline . . . dead on arrival"); *Balboa Capital Corp. v. Vital Pharmaceuticals, Inc.*, No. 18-CV-61125, 2019 WL 9091665, *3 (S.D. Fla. June 21, 2019) (stating "the Plaintiff has not presented a sufficient basis, at the very close of discovery or shortly after the close of discovery, for granting its requested relief"); *Eli Research LLC v. Must Have Info Inc.*, No. 13-CV-695, 2015 WL 4694046, *2 (M.D. Fla. Aug. 6, 2015) (denying motion to compel filed

Case 1:23-cv-24050-KMM   Document 159   Entered on FLSD Docket 06/06/2025   Page 18 of 18

CASE NO. 23-CV-24050-MOORE/Elfenbein

three days after the discovery cut off as untimely). Defendant's Motion does not address how this request is timely or provide any justification for its untimeliness. Instead, Defendant has relabeled a motion to compel as a motion for sanctions and has attempted to bundle it with the motion for reconsideration. Because the motion to compel attorney-client privileged communications is untimely, the Court declines to address the merits and denies it on that basis.

## IV. CONCLUSION

For the foregoing reasons, the Court finds no reason to reconsider its prior ruling and no basis to award sanctions. Further, the Court finds that Defendant's request to compel Plaintiff's attorney-client privileged communications is untimely. Accordingly, Defendant's Motion for Reconsideration and Motion for Sanctions, **ECF No. [82]**, is **DENIED**.

**DONE and ORDERED** in Chambers in Miami, Florida on June 5, 2025.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record